## DIVERSION OF A HIGHWAY IN LOCATING A RAILWAY.

Common Pleas Court of Medina County.

L. O. BROWN AND OTHERS, COMMISSIONERS OF MEDINA COUNTY,
v. AKRON & CHICAGO JUNCTION RAILROAD COMPANY. *

Decided, December 17, 1906.

*Roads—Diversion of Highway for the Purpose of Securing a Better
Crossing of Railway—Right to Re-locate Highway Governed by
Public Convenience—Necessity for Diversion of Road is for the
Court—Diversion may be Made Permanent—Section 3284.*

1. Authority is conferred by Section 3284 upon a railroad company to
divert the course of a highway for the purpose of making practical
the crossing of the highway by an overhead bridge, where the
change in the course of the highway does not impair its usefulness.
2. The question of the necessity of such a diversion of a highway is for
the court to decide, and in determining it the convenience of the
whole public, including those using the railway as well as the
highway, must be considered.

*I. T. Siddall, N. H. McClure* and *F. W. Wood,* for plaintiff.
*J. M. Lessick, Lee Elliott* and *Frank Heath,* contra.

WASHBURN, J.

The defendant is engaged in the reconstruction of its road in
Medina county, for the purpose of avoiding dangerous grades and
curves, and in Harrisville township it is practically building
a new road; the location of the present road being a long dis-
tance from the old road and the difference in the grade being
more than twenty-five feet.

In constructing its road upon the new line, it crosses a high-
way known as the Lodi and West Salem road, which is a diagonal
road extending from Lodi southwest to West Salem and beyond.
This highway is a main highway, much traveled.   The railroad
crosses it a little over a mile southwest of Lodi, at an angle of
about twenty-one degrees, and the grade of the railroad is at

* Affirmed by the Supreme Court without report, with the exception
that the judgment as to five thousand dollars was reversed, *Brown
et al, Commissioners,* v. *Railway,* 79 O. S., ——.

least twenty-seven feet above the grade of the highway at the point of crossing. West of the point of crossing this highway a distance of about 1500 feet the railroad crosses at right angles a north and south highway, known as the Chatham road, which road intersects the Homerville road just south of the railroad, and ends in the beforementioned diagonal road about a thousand feet south of the railroad. The Chatham road is a very little used highway, especially for travel south from the point where the railroad crosses it. About 2000 feet west of where the railroad crosses the Chatham road the railroad company is building a stone arch bridge, and is proposing to connect the east and west Homerville road through under this bridge to a new east and west road just north of the railroad, and parallel thereto, which it proposes to lay out and construct eastward across said Chatham road and to said diagonal road.

Then the railroad company is proposing to divert said diagonal road at the point of the crossing of the railroad to the westward about 500 feet and thence south, crossing the railroad at right angles under a stone arch bridge and connecting again with the diagonal road. And the railroad company is proposing to fill up the Chatham road where it crosses the same with an embankment about forty feet high.

The plaintiffs, claiming that these diversions of the highways were not authorized by law, brought this action to enjoin the railroad company from making them and from diverting or obstructing said diagonal road and said Chatham road at the points of crossing. A temporary injunction was granted, and the case is now submitted to the court for final disposition.

I never tried a case in which the law which the plaintiff claims should govern the case differed so widely from the law which the defendant claims should govern the case.

The defendant is proceeding to divert the highways in question under the provisions of Section 3284, which reads:

"A company may, whenever it is necessary in the construction of its road to cross a road or stream of water, divert the same from its location or bed; but the company shall, without unnecessary delay, place such road or stream in such condition as not to impair its former usefulness."

It has been held that this section applies only to country roads and not to the crossing of streets or highways in municipal corporations.  3 C. C., 214; 8 Bull., 334.

The plaintiff claims that a railroad company can not legally acquire one inch of a public highway so as to occupy it to the exclusion of the public, unless the same is acquired by proceedings for the vacation of highways in accordance with the law providing for the vacation of highways.  And it is not claimed that any such proceedings were had in this case.

On the other hand, the defendant claims that the statute above quoted gives it the right to divert a highway in the country without asking permission of the township trustees, county commissioners or any one else, and that the railroad company is itself the judge of whether or not it is necessary to divert the highways in question.  In other words, that the railroad company has the absolute right under that statute to divert the highways in question, provided it restores them to their former state of usefulness, and that in a proceeding like this the court even can not determine that there is no necessity for the diversion, and enjoin the same.

The court can not agree with the law as above claimed by either party to this action.

If the plaintiff's claim is correct, that is, that the location of a highway can not be changed, except by vacating the part changed, then Section 3284 as above quoted is entirely superfluous; because if the railroad company proceed as the plaintiff claims it must proceed, under the vacation statute, it could acquire the absolute title in fee simple to the parts of the highway diverted, without the aid of Section 3284.

*Megrue* v. *Putnam County,* 15 C. C., 242, is a case in which Judge Price, then a circuit judge, participated, and it was there held that Sections 3283 and 3284 gave authority to the county commissioners to contract with a railroad company for a surrender to the railroad company for its exclusive use of a portion of a public highway, provided the railroad company diverted the highway and restored the same to its former state of usefulness by substituting another way for the part taken by the railroad company.  There was no vacation of the highway

under the statute in this case and there was an exclusive use granted, but it was authorized because there was a diversion and the *substitution of another way.*

In other words, while the authorities could not give away or sell a part of the highway, they could exchange a part of it for another way.

I am aware that there are numerous cases in Ohio which hold that the public highways of the state are sacred, and that neither the commissioners nor the township trustees nor the council of cities have any authority to make an agreement with a railroad company by which the company shall acquire the right to use any part of the public highway to the exclusion of the public, without substituting another way for the part used by the railroad.

That is the well settled law in Ohio, and it is stated in very strong language by the Supreme Court in the case of *Railway Company* v. *City of Elyria,* 69 O. S., at page 414, and in the 52 O. S., page 262.

But a careful reading of these cases and of all the cases cited by counsel, discloses the fact that a part of the highway was being taken *without substituting* any other way therefor, and under the laws of Ohio such a result, that is, the taking of a part of the highway without substituting another way therefor, can be accomplished only by proceedings under the statute for the vacation of highways.

In other words, the public highways can not, by agreement of the parties or otherwise, be obstructed; but must be kept open and in repair and for the use of the public.

But the case at bar is not a case where the railroad company is seeking to take a part of the highway without substituting any other way therefor. The railroad company does not claim that it has a right to obstruct the highway or to take a part of the highway and use it to the exclusion of the public, *except on condition that it restore the highway to its former state of usefulness by substituting another highway therefor.* And if it does restore the highway to its former state of usefulness by substituting another way, then it does not obstruct the highway, nor does it exclude the public from the highway.

Section 3283, Revised Statutes, gives to certain public authorities, having charge of streets and highways, authority to agree, under certain circumstances, that a railroad company may use a street or highway or a part thereof in the construction of its railroad, and on failure to so agree the railroad company is empowered to acquire such right by appropriation proceedings; but it is settled that the right so acquired by agreement or appropriation is only that of joint occupancy, and said section does not provide a way whereby the railroad can acquire the *exclusive* occupancy and use of the street or highway, without substituting another way therefor. 63 O. S., page 614; 69 O. S., page 414.

Under Section 3283 a railroad can not acquire by appropriation the right to the exclusive use of a highway; neither can it, under this section, acquire such right by agreement with the public authorities, except by substituting another way for the one taken. If the public authorities arbitrarily and without good cause refuse to agree to a reasonable substitution of another way, and the people in the vicinity arbitrarily and because of an unreasonable hostility prevent a vacation of the highway, then, if there is no other way provided by law by which the railroad company can acquire that which is reasonably necessary in the construction of its railroad, it would be very difficult—almost impossible—to build railroads in Ohio.

Railroads are public necessities and are so recognized by the law. While they are conducted for private gain, they have a public character and many laws have been passed regulating and controlling them as public agencies, and the rights which their public character entitles them to must be considered as well as the convenience of those traveling on a highway in the country.

The Legislature must have intended to provide some way by which those having charge of a country road in a township and the people living in that immediate vicinity could not obstruct a great public improvement and prevent the building of the railroad by arbitrary and unreasonable opposition, and my judgment is that Section 3284, when construed with the other sections of the statutes and the decisions of the Supreme Court, can

be and should be so construed as to have some force and effect, and that it does provide a way by which a railroad company, when it is prevented by arbitrary and unreasonable opposition from acquiring the right to the exclusive use of a part of a highway in the country, by appropriation proceedings or agreement under Section 3283 or by having the same vacated, may acquire that right by diverting the highway and substituting another way therefor, provided such use be reasonably necessary and the substituted way is a substantial restoration of the highway to its former state of usefulness.

On the other hand, the claim of the defendant that it is the judge of whether or not a diversion of the highway is necessary, and that it may divert a highway in the country at will, subject only to the restriction that it restore the same to its former state of usefulness, ought not to be the law in my judgment, for if it was, a railroad company building across a county might divert all the highways of that county simply and solely for the reason that it would be some convenience to the railroad company in building its railroad, and without reference to the convenience or wishes of the people of the county.

It is well settled that a grant such as is contained in Section 3284 should be strictly construed against the railroad company, and I do not think that the Legislature intended to vest in railroad companies the absolute right to divert highways at will, even if the railroad companies can and do restore the diverted highways to their former state of usefulness.

After listening to the very able and extended arguments of counsel in this case, and after looking over the various authorities cited by them, I have come to the conclusion that a proper construction of Section 3284 is this:

That when in the construction of a railroad it becomes necessary to cross a highway, in the country, the railroad company is granted by this section the right to divert such highway, provided:

First. That the proposed diversion is reasonably necessary; and

Second. Provided the railroad company restores the highway to its former state of usefulness.

The railroad company may in the first instance determine whether or not it is necessary to divert the highway; if that claimed necessity be questioned in court, then it is a question for the court to decide whether or not the proposed diversion is reasonably necessary.

In considering whether or not the diversion is necessary, the court should consider the conveniencies and necessities of the *whole* public, the railroad being a part of the public; the rights of the public traveling along the railroad are to be considered as well as the rights of the public traveling on the highway.

Among other things, the court should take into consideration the location and use of the highway; the location, character and use of the railroad; the necessities of the public, not only in the use of the highway, but in the use of the railroad; the feasibility and practicability of building the railroad without diverting the highway, and the expense that would be made necessary to do that; the grade of the railroad and the highway, and all of the facts and circumstances of the situation as shown by the evidence.

If the court determines that the diversion is necessary, then the next question is, can and will the railroad company restore the highway to its former state of usefulness?

And in determining whether or not the highway can be restored to its former state of usefulness, it goes without saying, that this does not mean that it must be restored to its former location, because if that was the case there would be no sense in saying it could be diverted. Besides a very large number of cases have been cited by counsel which hold that the railroad company need not restore the highway to its former location, and as I remember it none have been cited which hold that it must restore the highway to its former location.

If the diversion is permanent, then of course there is no restoration of the highway in its former location, and the Supreme Court of this state has decided that the diversion may be permanent, and that authority is given a railroad company to condemn property necessary to substitute another highway for the one taken. The language of the Supreme Court decision in 34 O. S., at page 119, is as follows:

"This provision confers power to divert the road or stream, coupled with the duty imposed to place the same, after diversion, in such condition as not to impair its previous usefulness. The requirement is not to restore to its former place or condition, but to such condition as not to affect, materially, its utility. It is to be left in such condition, how much soever it may be diverted from its former course, that the right to its public or private enjoyment, where such right exists, shall not be materially disturbed or interfered with. Subject to the performance of this condition, the power or right to divert the same is co-extensive with the public necessity which calls for its exercise. The meaning assigned to the language of this section, by counsel for the defendant, confines the right to divert the stream or highway, to a use merely temporary in its character. This we think far too restricted; so much so, that, if adopted, it, to a greater or less extent, would result in defeating the obvious design of the statute. The diversion may be temporary or permanent, as the public needs or necessities require."

In 20 O. S., 150, which was a case where the diversion was a permanent one, the language of the decision begining at the bottom of page 161 is:

"The company was empowered by its charter to divert highways wherever it is necessary in the construction of its road; but they were also required to place such highway, without unnecessary delay, 'in such condition as not to impair its former usefulness.'"

And further on this subject, Judge Boynton speaking for the Supreme Court in 31 O. S., at page 347, says:

"There is little doubt that the Legislature did not intend to require a railroad company in crossing a public highway to restore the same to its actual former condition. This would be practically impossible. Substantial restoration is all that was contemplated or intended.' Some inconveniences to public travel are necessarily incident to all public railroad crossings, and such as are inseparably connected therewith, must be submitted to by the public."

So that my conclusion is, that if the court finds, considering all the facts and circumstances, that the proposed diversion of the highways in question is necessary, and that the railroad company can and will make a substantial restoration of the highway, by diverting the same and substituting another way therefor, then

the proposed diversion is authorized by law.   This being the law, what solution does it lead us to when applied to the facts and circumstances of this case?

First.   As to the diagonal road or the road known as the Lodi and West Salem road:   At the point of crossing this highway, this highway is more than sixty feet wide; the railroad crosses it at a very acute angle, and the testimony satisfies the court that it is very difficult and very expensive to construct a bridge across the highway at that angle, and that it would not be good railroad construction to do so, and considering the character of the railroad being built by the defendant company and the cost and difficulties of constructing such a bridge as would be necessary at such an angle, the court feels fully satisfied that it would be unjust to require the railroad company to bridge the highway as it is now located, but that some diversion of the highway so as to permit a crossing at right angles is necessary.

I find, however, that it is not necessary to divert the highway to the westward as far as is proposed by the railroad company; but that a reasonable diversion would be to divert it so far and no more than is necessary to cross the railroad at right angles. That can be done without materially lengthening the highway, without changing its grade and with but slight inconvenience to the public, except that the view would be obstructed, and that in my judgment is one of the inconveniences to public travel that is necessarily incident to such crossings, and is insignificant when compared with the expense and difficulty of building such a bridge as would be required at that point if no diversion was permitted.

I, therefore, find in reference to this highway, that if the railroad company divert it as I have indicated, and drain, gravel and macadam it as is proposed by them, and in addition to that, will build the kind of a bridge that is proposed to be built by them, that is, a stone arch bridge over the whole width of the highway at right angles, and will construct the same so that a street car track may be laid on their right-of-way through and under one of the arches to said bridge off of the highway, so that when a street car company is granted the right to use said highway for street railway purposes, it may build its track through

said arch and thus avoid inconvenience and danger to the public at the point of crossing the railroad. If these things be done, my judgment is that there will be a substantial restoration of the highway to its former state of usefulness.

Having heretofore found that it is necessary to divert this highway and having indicated what the court considers would be a substantial restoration of the highway to its former state of usefulness, I find that the highway may be diverted, provided the railroad company does what I have indicated.

As to the crossing of the Chatham road, I find from the evidence that the Chatham road is a very little used highway, especially for travel toward West Salem; that it ends to the south within about a thousand feet of this railroad by running into and connecting with said diagonal road, known as the Lodi and West Salem road; that if the railroad company divert the same as proposed, by building along the north line of their track a highway, properly drained, graveled and macadamed, connecting said Chatham road to the east with said diagonal road, and on the west through the arch bridge over Black river with the Homerville road, such a diversion will be of very little inconvenience to the public travel; but on the contrary will be a benefit to the most of the travel on the Chatham road. The public using the Chatham road north of the railroad could then have equally as good facilities for using the Homerville road as they now have, and they would have much better facilities for using the diagonal road in driving to Lodi, and the only inconvenience would be to those desiring to go toward West Salem, and that inconvenience would cause them to travel two sides of a triangle about fifteen or eighteen hundred feet in length instead of one side of that triangle, and the travel in that vicinity as shown by the evidence toward West Salem is very light, and in all human probabilities will remain so.

There would be, however, an additional burden placed on the people to maintain and keep in repair a somewhat greater length of highway.

So that I feel that if the Chatham road is diverted by the railroad company as proposed, and the defendant will pay to the proper authorities having charge of the keeping and repair of

said road the sum of $5,000 to be used by said authorities in keeping said roads in repair in the future, said Chatham road will, all things being considered, be restored to substantially its former state of usefulness.

But I have had some trouble in determining whether or not there is such a necessity for the diversion of the Chatham road as justifies the court in permitting its diversion. The Chatham road as it now crosses the railroad is at right angles, and the only necessity for the diversion is the fact that it would save the railroad company the expense of building a bridge over the entire highway at an expense of at least fifty thousand dollars. The expense of building the railroad without diverting the highway is proper to be considered in determining the necessity of the diversion, and there may be circumstances where the inconveniences to the public traveling on the highway by the diversion is so light, and the expense of building the railroad without diverting the highway so great, that a court of equity ought to determine that the great expense alone is sufficient necessity for the diversion.

Suppose, for instance, that a railroad crosses two highways within one hundred feet, and that one highway can be turned into the other for a short distance without materially affecting or inconveniencing travel on the highway, but in fact benefitting the bulk of the travel on the highway, and suppose that the cost of the extra bridge to be one hundred thousand dollars, would any reasonable man claim that the one hundred thousand dollars expense of an extra bridge within one hundred feet of another bridge was not a sufficient necessity for the slight diversion?

The present case as to the Chatham road is like the one above suggested, except as to the extent of the diversion and the cost of the bridge.

But, as the railroad company must build such a bridge across said diagonal road about fifteen or eighteen hundred feet eastward from the Chatham road, and as the railroad company is building a similar bridge about two thousand feet to the westward, near Black river, and as I find that the Chatham road as it is proposed to be diverted is a substantial restoration of it to its former state of usefulness, my best judgment—although I

am in some doubt about the matter—leads me to the conclusion that, considering the slight inconvenience the public will be put to by such diversion, and the expense that the railroad company would be put to in building a third bridge of this character within less than a mile, there is a sufficient necessity shown to justify the court in granting the permission to divert, upon the conditions and as I have indicated. See 12 C. D., 805, where a greater diversion was permitted in Lorain county by our circuit court.

The court having found that the diversion of these highways as proposed by the railroad is not a proper diversion in all respects, the order will be that the defendant pay the costs of these proceedings; if the railroad company will not make the diversions upon the conditions and in the manner I have indicated, then a decree may be entered enjoining said company from diverting said highways as it is now proposing to do; but if the railroad company will adopt the suggestions of the court as to the diversion of these highways, and make it appear to the court that it proposes to and will divert the highways upon the conditions and as I have indicated, then the injunction in this case will be dissolved and the petition of the plaintiffs dismissed. That will permit a taking of the case to the circuit court by the plaintiffs.

But, should the plaintiffs not desire to take the case higher, the court will make an order dissolving the injunction and continuing the case, with the understanding that if the railroad company does divert these highways as above indicated, and to the full satisfaction of the court, then the case will be dismissed, but if it does not do so, then the railroad company will be required to restore said highways to their present location and condition. 36 O. S., 434.